UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ERIC D.,

              Plaintiff,

        v.                           **DECISION AND ORDER**

                                             21-CV-6400S

COMMISSIONER OF SOCIAL SECURITY,

              Defendant.
_____

        1.        Plaintiff Eric D.[1] brings this action pursuant to the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security that denied his applications for disability insurance benefits and supplemental security income under Titles II and XVI of the Act. (Docket No. 1.) This Court has jurisdiction over this action under 42 U.S.C. § 405(g).

        2.        Plaintiff protectively filed his applications with the Social Security Administration on September 6, 2017. Plaintiff alleged disability beginning January 1, 2017, due to lumbar degenerative disc disease status status-post laminectomy syndrome, lumbar myofascial derangements, left foot drop, bilateral shoulder internal derangement status post right shoulder arthroscopic surgery and subsequent re-tear of the right rotator cuff, bilateral carpel tunnel syndrome stats post bilateral releases, and obesity. Plaintiff's applications were denied, and he thereafter requested a hearing before an administrative law judge ("ALJ").

---

[1] In accordance with this Court's Standing Order of November 18, 2020, and consistent with guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, this Decision and Order will identify Plaintiff by first name and last initial.

3. On July 29, 2019, ALJ Gregory Moldafsky held a video hearing (due to the COVID-19 pandemic) at which Plaintiff—represented by counsel—and Vocational Expert Susanna Roche appeared and testified. (R.[2] at 79-131, 18.) At the time of the hearing, Plaintiff was born on April 12, 1970, who approached advanced age (that is 50 to 54 years old) on November 12, 2019. (R. at 267, 27). He had a high school education (R. at 27). Prior to November 2019, Plaintiff's transferability of skills was not at issue but after November 12, 2019, he was not able to transfer job skills (R. at 27). Plaintiff's past relevant work was communication equipment salesperson (light exertion work, performed sedentary), book editor (sedentary), and editorial writer (sedentary) (R. at 27). The ALJ found that Plaintiff was unable to perform this past work due to the degree of skill he can perform (R. at 27).

4. The ALJ considered the case *de novo* and, on May 20, 2020, issued a written decision denying Plaintiff's applications for benefits. After the Appeals Council denied Plaintiff's request to review the ALJ's decision (including not including additional evidence submitted after the ALJ's decision, R. at 2), he filed the current action, challenging the Commissioner's final decision.[3] (Docket No. 1.)

5. Both parties moved for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. (Docket Nos. 8, 10.) Plaintiff filed a response on August 8, 2022 (Docket No. 11), at which time this Court took the Motions under advisement without oral argument. For the reasons that follow, Plaintiff's Motion is **denied**, and Defendant's Motion is **granted**.

---

[2]Citations to the underlying administrative record are designated as "R."

[3]The ALJ's May 20, 2020, decision became the Commissioner's final decision on this matter when the Appeals Council denied Plaintiff's request for review.

6. A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 26 L.Ed.2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

7. "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams *ex rel.* Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

8.     The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled under the Act. See 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court of the United States recognized the validity of this analysis in Bowen v. Yuckert, and it remains the proper approach for analyzing whether a claimant is disabled. 482 U.S. 137, 140-42, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987).

9.     The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original); see also 20 C.F.R. § 404.1520; Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999).

10.    Although the claimant has the burden of proof on the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Yuckert, supra, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984). The final step is divided into two parts. First, the Commissioner must assess the claimant's job

qualifications by considering his physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform.  See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); see also Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

11.     The ALJ analyzed Plaintiff's claim for benefits under the process set forth above.  Plaintiff met insured status requirements through March 31, 2019 (R. at 20).  At Step One, the ALJ found that Plaintiff has not engaged in substantial gainful activity since the onset date on January 1, 2017.  (R. at 21.)  Hence at issue is disability coverage from January 1, 2017, through March 31, 2019.

12.     At Step Two, the ALJ found that Plaintiff has the following severe impairments:  lumbar degenerative disc disease status status-post laminectomy syndrome, lumbar myofascial derangements, left foot drop, bilateral shoulder internal derangement status post right shoulder arthroscopic surgery and subsequent re-tear of the right rotator cuff, bilateral carpel tunnel syndrome stats post bilateral releases, and obesity.  Id. at 21.  Plaintiff, in effect, claims that the Appeals Council should have considered newly submitted evidence about his mental impairment (see Docket No. 8, Pl. Memo. at 17-19).  At Step Three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals any impairment(s) listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Id.

13.     Next, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform sedentary work, except he can only occasionally climb ramps and stairs; never climb ladders, ropes, and scaffolds; occasionally stoop, balance, kneel, and

crouch; never crawl; occasionally push, pull, and operate foot controls with left lower extremity due to foot drop; frequently handle and finger with the bilateral upper extremities; occasional overhead reaching with the bilateral upper extremities; and never work at unprotected heights. In addition, due to symptoms of pain he is limited to simple (as defined in the D.O.T. as SVP ratings 1 and 2), routine, and repetitive tasks in a work environment that is not fast paced or has strict production quotas. (R. at 22-23.)

14. At Step Four, the ALJ found Plaintiff is unable to perform any past relevant work. (R. at 27.) At Step Five, the ALJ found based upon the opinion of the vocational expert that, prior to November 12, 2019, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (R. at 28.) The expert found that a hypothetical claimant at Plaintiff's age prior to November 12, 2019, education, skills, and work experience could perform such occupations as surveillance system monitor (sedentary, unskilled work), document preparer (sedentary, unskilled work), or callout operator (light, unskilled work).

15. After November 12, 2019, however, the vocational expert opined that, with Plaintiff's change in age category, considering his age, education, work experience, and RFC there were no jobs that Plaintiff could perform.

16. Accordingly, the ALJ found that Plaintiff is not disabled through March 31, 2019, for disability insurance benefits but he was disabled for supplemental security income from November 12, 2019. (R. at 29-30.)

17. Plaintiff argues that the RFC determination is not supported by substantial evidence because the Appeals Council erred in not accepting Plaintiff's post-hearing evidence from Dr. P. Richard Fauth, Ph.D., and that the ALJ did not properly credit the

opinion of a treating physician.  He also contends that the physical RFC did not consider all his severe impairments (specifically his obesity) therefore it lacks substantial evidence.  For the reasons that follow, these arguments are unavailing.

18. Under the Social Security standards applicable for Titles II and XVI applications after March 2017 for evaluating medical evidence, the agency considers the persuasiveness of a medical opinion, 20 C.F.R. §§ 404.1520c(a), 416.920c(a).  This is determined by consideration of the supportability and consistency of the opinion as the most important factors, id. §§ 404.1520c(c)(1)(2), (b)(2), 416.920c(c)(1), (2), (b)(2).  The ALJ must explain his approach with respect to supportability and consistency when considering a medical opinion, Melissa F. v. Comm'r, No. 20CV1363, 2021 WL 3887256, at *3 (W.D.N.Y. Aug. 31, 2021) (Carter, Mag. J.) (citing, e.g., 20 C.F.R. § 416.920c(b)).  The more consistent a medical opinion is with the rest of the evidence from other medical and nonmedical sources, the more persuasive that opinion will be, 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).  The ALJ, however, is not required to articulate how each medical opinion is considered, 20 C.F.R. §§ 404.1520c(b)(1), 416.920c(b)(1).

19. Plaintiff first argues that the Appeals Council erred in not accepting Dr. Fauth's evaluations showing that his mental impairments were severe.

20. As new evidence after the ALJ's hearing, Social Security regulations "expressly authorize a claimant to submit new and material evidence to the Appeals Council when requesting review of an ALJ's decision," and if the new evidence relates to before the ALJ's decision, the Appeals Council shall evaluate the entire record, Perez v. Chater, 77 F.3d 41, 44 (2d Cir. 1996) (quoting the regulation now found at 20 C.F.R. §§ 404.970(a)(5), 416.1470(a)(5)).  Plaintiff bears the burden of showing that evidence

7

was new, material, relates to the period on or before the hearing decision, and has a reasonable probability that it would change the outcome of the ALJ's decision, 20 C.F.R. §§ 404.970(a)(5), 416.1470(a)(5).  The issue is whether these additional medical records would change the ALJ's findings, see Tirado v. Bowen, 842 F.2d 595, 597 (2d Cir. 1988).

21.	Dr. Fauth evaluated Plaintiff in April and May 2010 (R. at 59).  The doctor found that Plaintiff had highly significant difficulties with tasks requiring working memory (R. at 60).  On April 25, 2011, Dr. Fauth submitted a letter to the New York State Bar Examiners for an accommodation to Plaintiff for double the time to take the bar examination, taking the exam in a separate room, using a large print exam, leave to use a word processor to complete the written portion of the exam, and allowed use of lumbar pillow during the bar exam (R. at 73-74).

22.	The ALJ found, at Step Two, that Plaintiff's attention deficit hyperactive disease ("ADHD") was a nonsevere impairment, that he was able to learn, recall, and use information to perform work (R. at 21).  Applying the "paragraph B" mental functioning criteria, the ALJ found Plaintiff had mild limitation in understanding, remembering, or applying information, because there was no mental status examination suggesting any significant limitation (R. at 21).  The ALJ apparently had not considered Dr. Fauth's evaluation.  The ALJ then found that Plaintiff's concentration, persistence, or maintenance of pace was "no more than a mild limitation" based upon the ALJ's observation of Plaintiff during the hearing (R. at 21-22).  Again without citing Dr. Fauth, the ALJ found that there was "no mental status examination findings to show significant concentration, memory, or attention deficits" (R. at 22).

23. The ALJ found in the RFC that Plaintiff was limited to simple, routine, and repetitive tasks but due to his pain symptoms (R. at 22-23) and no reference to nonsevere mental impairments.

24. Upon Plaintiff's post-decision submission of Dr. Fauth's evaluations, the Appeals Council held that it did not show a reasonable probability that these evaluations would change the outcome of the matter (R. at 2).

25. Plaintiff argues that the Appeals Council erred in rejecting Dr. Fauth's evaluations (Docket No. 8, Pl. Memo. at 17-19).

26. Defendant defends the Appeal Council's decision because Dr. Fauth's evaluations predate Plaintiff's 2017 onset date (Docket No. 10, Def. Memo. at 21). Defendant argues that accommodations to take the bar examination is not the same as having impairments that preclude all work (id. at 21-22). Defendant does not deem Dr. Fauth's evaluations to be a "medical opinion" under current regulations (id. at 22), see 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2).

27. Next, Defendant observes that the ALJ found in the RFC mental restrictions, limiting Plaintiff to simple, routine, and repetitive tasks (id.; R. at 18-19, 22-29). Defendant concludes that Dr. Fauth's evidence does not change the outcome of the overall decision, not just a step in the analysis (Docket No. 10, Def. Memo. at 23).

28. Plaintiff fails to show his work activities were affected by these mental impairments. Including Dr. Fauth's pre-onset evaluations and the bar examination accommodation letter in this record would not change the result. Although the ALJ did not find Plaintiff's ADHD or mental impairments were severe (R. at 21-22), the ALJ concluded (for other stated reasons) that Plaintiff's RFC included limitation to simple,

routine, and repetitive tasks (R. at 22-23). The ALJ based his findings on how Plaintiff testified during the video hearing.

29. Therefore, this Court concludes that the Appeals Council did not err in not adopting Plaintiff's argument for inclusion of Dr. Fauth's evaluation in the record and the underlying decision would not change if these evaluations were included. This Court rejects Plaintiff's Motion for Judgment on the Pleadings (Docket No. 8) on this ground.

30. Next, Plaintiff argues that the ALJ failed to properly credit the opinion of treating physician Dr. Oliver Masaba resulting in a determination that was not supported by substantial evidence (Docket No. 8, Pl. Memo. at 13-14, 19-24, 24-26).

31. Plaintiff contends that the ALJ instead relied upon stale opinions of consultative examiner Dr. Alan Chu (R. at 455-60, 26) and state agency examiner, Dr. R. Dickerson (R. at 141-43, 25-26) before Plaintiff's bilateral decompression lumbar laminectomy on May 30, 2018 (Docket No. 8, Pl. Memo. at 11, 24-26; Docket No. 11, Pl. Reply Memo. at 4; R. at 480).

32. Defendant argues that Plaintiff merely seeks "different inferences and findings from conflicting evidence" (Docket No. 10, Def. Memo. at 24), see McIntyre v. Colvin, 758 F.3d 146, 149 (2d Cir. 2014) (if evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld). By giving a different interpretation, Defendant concludes that Plaintiff fails to show that no reasonable factfinder could have evaluated the evidence as the ALJ did (id. at 26).

33. Defendant counters that there is no "categorical 'stale' rule" but it was an evidentiary issue subject to substantial evidence standard and deference to the ALJ as factfinder (id.).

34. Assessing the medical opinions, Defendant argues that Dr. Masaba had only two examinations of Plaintiff before rendering his June 2019 medical opinion rendering Plaintiff's functional complaints (Docket No. 10, Def. Memo. at 28; R. at 651, 659, 501-09). Dr. Masaba's opinion was disproportionate to Plaintiff's condition by finding disabilities in 2009 although Plaintiff continued to work through January 2017 onset date (Docket No. 10, Def. Memo. at 27-29; R. at 271 (Plaintiff's disability report)).

35. Dr. Masaba treated Plaintiff for shoulder pain, bilateral carpel tunnel syndrome, low back pain, and left foot drop (R. at 651; Docket No. 8, Pl. Memo. at 13). Dr. Masaba then rendered his medical source statement on June 13, 2019, and observed that Plaintiff could sit for 1 hour, stand for 30 minutes, and walk 30 minutes in an 8-hour workday (R. at 501, 502, 503, 26). Dr. Masaba found that Plaintiff needed to lie down or recline the remainder of the day (R. at 502, 26). Dr. Masaba also concluded Plaintiff could never perform overhead reaching (R. at 504, 26).

36. The ALJ found Dr. Masaba's opinion (suggesting that Plaintiff could perform less than sedentary work) was unpersuasive (R. at 26). The ALJ concluded that Dr. Masaba's opinion was "out of proportion to the medical record as a whole as well as the physical examination findings" and Plaintiff's description of his daily activities (stating that he could drive, live independently, attend appointments, and shop) (R. at 26).

37. Meanwhile, the ALJ credited as persuasive the opinions of consultative examiner Dr. Chu (R. at 26, 455) and State Agency medical consultant Dr. R. Dickerson (R. at 25-26, 141).

38. On March 5, 2018, Dr. Chu examined Plaintiff and observed that Plaintiff had restriction for prolonged standing and walking and moderate restriction for squatting,

kneeling, and bending (R. at 455, 460, 26).  Dr. Chu also found that Plaintiff could perform light cooking, he was able to shower and dress himself but needed help with cleaning, doing laundry, and shopping due to heavy lifting (R. at 457).

39.     The ALJ found Dr. Chu's opinion was persuasive because it was consistent with the medical records as well as Plaintiff's examination findings and the type and degree of treatment needed including his surgeries (R. at 26).

40.     On March 12, 2018, Dr. Dickerson reviewed Plaintiff's medical records and concluded that Plaintiff could lift 10 pounds occasionally, stand and or walk about 2 hours in an 8-hour workday, and sit for 6 hours in an 8-hour workday (R. at 141, 26).

41.     The ALJ found Dr. Dickerson was persuasive because he described the weight Plaintiff could lift consistent with the entire medical record (R. at 26).

42.     Plaintiff contends that he had 2018 surgery but still suffered pain, rendering the earlier consultative examinations stale(Docket No. 8, Pl. Memo. at 25).

43.     Plaintiff argues that the ALJ needed to specify the inconsistencies between Dr. Masaba's opinion and Plaintiff's activities (Docket No. 8, Pl. Memo. at 20-21), citing cases that predate the March 2017 amended regulations, including one case with an application filed before March 2017, Crutch v. Colvin, No. 14-cv-3201, 2017 WL 3086606, at *1, 8 (E.D.N.Y. July 19, 2017) (claimant applied July 16, 2012).  These cases rested upon the former regulation's treating physician rule where the opinion of the treating physician once deserved controlling weight, 20 C.F.R. § 404.1527(c)(2) (for evaluation of opinion evidence for claims filed before March 27, 2017); Crutch, supra, 2017 WL 3086606, at *8.

44.     Assessing these three medical opinions at issue under the current regulations, however, the ALJ need only assay their persuasiveness or how supportable and consistent they are with the evidence.

45.     Frequency of examination also is part of a factor for the relationship with Plaintiff in assessing opinion evidence, 20 C.F.R. §§ 404.1520c(c)(3)(ii), 416.920c(c)(3)(ii). This frequency "may help demonstrate whether the medical source has a longitudinal understanding" of Plaintiff's impairment, 20 C.F.R. §§ 404.1520c(c)(3)(ii), 416.920c(c)(3)(ii).

46.     Dr. Masaba's two visits before rendering his June 2019 opinion makes that opinion less persuasive than if the doctor had a longer longitudinal treatment record with Plaintiff (Docket No. 10, Def. Memo. at 27-28). Thus, the ALJ appropriately considered this opinion.

47.     As for Dr. Dickerson's opinion, the ALJ differed based on examination findings of foot drop and rotator cuff tear and concluded that Plaintiff had greater postural, manipulative, and environmental limitations than concluded by Dr. Dickerson (R. at 26).

48.     The ALJ also appropriately weighed the consultative examiner and state agency physicians' opinions. The ALJ compared these opinions with the entire record and Plaintiff's examination (R. at 26).

49.     This Court denies Plaintiff's Motion for Judgment (Docket No. 8) on this ground.

50.     Finally, Plaintiff objects to the RFC not considering his obesity although that condition was deemed a severe impairment (Docket No. 8, Pl. Memo. at 27-28).

51. Defendant counters that the ALJ did explicitly referenced Plaintiff's obesity. The ALJ stated that "Pursuant to SSR 19-2p, I have taken into account that obesity can cause limitation of function in any of the exertional functions such as sitting, standing, walking, lifting, carry, pushing, and pulling and mental functioning." (Docket No. 10, Def. Memo. at 29; R. at 22.)

52. Defendant then argues that Plaintiff fails to show he had greater functional restrictions from his obesity (Docket No. 10, Def. Memo. at 29-30). Defendant argues that the ALJ explicitly stated he considered Plaintiff's obesity (id. at 29). Plaintiff needed to show additional functional restrictions from his obesity but has not done so (id.).

53. Plaintiff was 5 foot 9 inches, 278 pounds (R. at 457, 22), thus with a body mass index of 41.0, indicative of obesity, see Calculate Your BMI, U.S. Dep't of Health & Human Servs., National Institute of Health, National Heart, Lung, and Blood Institute, https://www.nhlbi.nih.gov/health/educational/lose_wt/BMI/bmicalc.htm (last visited Aug. 2, 2023). The ALJ said he considered Plaintiff's obesity and concluded it could cause limitation of function (R. at 22).

54. Plaintiff argues that the ALJ had to apply Plaintiff's obesity as a factor in evaluating his disability at Steps Two through Four (Docket No. 8, Pl. Memo. at 28). But Plaintiff has the burden of proof at these Steps that his obesity disabled him.

55. Obesity could affect exertional limitations and must be considered at Steps Four and Five (id. at 27), SSR 19-2p, Titles II and XVI: Evaluating Cases Involving Obesity, SSR 19-2p, 2019 WL 2374244 (S.S.A. May 20, 2019).

56. Remand is warranted where an ALJ fails to evaluate obesity at Steps Two through Four (id.), Sotack v. Astrue, No. 07CV382, 2009 WL 3734869, at *5 (W.D.N.Y. Nov. 4, 2009) (Telesca, J.).

57. This Court agrees with Defendant that the ALJ expressly considered Plaintiff's obesity consistent with SSR 19-2p (R. at 22). Thus, remand is not warranted for the ALJ's failure to evaluate Plaintiff's obesity, differing from Sotack where the ALJ in that case did not mention the claimant's obesity but commented that the claimant was not compliant with the treating physician's recommendation to lose weight and the record in that case contained evidence of "the obvious limiting effects of Plaintiff's obesity," Sotack, supra, 2009 WL 3734869, at *5.

58. Furthermore, Plaintiff has not alleged any limitations arising from his obesity. Plaintiff cannot merely claim obesity without evidence proving additional functional restrictions beyond the RFC finding, see Harrington v. Saul, 827 F. App'x 146, 148 (2d Cir. 2020) (summary Order) (Docket No. 10, Def. Memo. at 29).

59. Plaintiff's treating physician, Dr. Haris Aziz, on December 27, 2017, noted "otter issues" including obesity (R. at 347). Plaintiff next cites Dr. Aziz's April 23, 2018, examination assessing Plaintiff's obesity (Docket No. 8, Pl. Memo. at 10, citing R. at 640-41). These handwritten notes, however, do not clearly mention obesity or if they did state any functional limitation arising from obesity.

60. Dr. Chu in his consultative examination noted Plaintiff's height and weight (R. at 457) but did not diagnose for obesity (cf. R. at 459-60) while diagnosing Plaintiff's chronic low back pain, left knee pain, and right shoulder pain (R. at 460). Dr. Chu also did not state how Plaintiff's obesity affected his functioning.

61. Thus, this Court denies Plaintiff's Motion for Judgment (Docket No. 8) on this ground.

IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 8) is DENIED.

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 10) is GRANTED.

FURTHER, that the Clerk of Court is directed to CLOSE this case.

SO ORDERED.

Dated: August 9, 2023
Buffalo, New York

s/William M. Skretny
WILLIAM M. SKRETNY
United States District Judge